THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRIAN K. KEELEY and TEREASA M. KEELEY,<br><br>Plaintiffs,<br><br>v.<br><br>THE TRAVELERS HOME AND MARINE INSURANCE COMPANY,<br><br>Defendant. | CASE NO. C16-0422-JCC<br><br>ORDER |

This matter comes before the Court on Defendant's motion to dismiss (Dkt. No. 7) and Plaintiffs' motion for partial summary judgment (Dkt. No. 12). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion to dismiss (Dkt. No. 7) and DENIES the motion for partial summary judgment (Dkt. No. 12) for the reasons explained herein.

**I.   BACKGROUND**

This case involves a homeowners' insurance liability claim. The parties are in agreement about the relevant facts described below. (*See* Dkt. No. 17 at 2.)

Plaintiffs Brian and Tereasa Keeley live in a condominium in Seattle owned by Mr. Keeley. Their unit is directly above a unit owned by Laura Curcio. In April 2009, Mr. Keeley installed hard surface floors in the Keeleys' unit.

In early 2010, Mr. Keeley realized that he overlooked a provision in the condo bylaws stating that "no Owner shall install hard surface flooring within a Unit except with the prior written consent of the Unit Owner below, if any." On February 1, 2010, Mr. Keeley alerted Curcio that he had installed the flooring without obtaining her consent. Curcio made no complaint at that time.

In early 2013, Curcio began to complain to the Keeleys about noise that she attributed to the hard surface flooring. On February 7, 2014, Curcio sent a letter through legal counsel making a formal claim against the Keeleys. Curcio asserted that that the Keeleys' installation of hard surface flooring interfered with her use of her unit and that the condo bylaws gave her "the absolute right to prevent [the Keeleys] from installing hardwood floors in [their] Unit."

The Keeleys had a homeowners' insurance policy issued by Defendant Travelers Home and Marine Insurance Company. The policy included the following relevant provisions:

> If a claim is made or a suit is brought against any "insured" for damages because of "bodily injury," "personal injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:
>    1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and
>    2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability is exhausted by the payment of a judgment or settlement.

(Dkt. No. 7-2 at 48.)

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results during the policy period, in:
>    a. "bodily injury"; or
>    b. "property damage."
>
> "Property Damage" means physical injury to, destruction of, or loss of use of tangible property.

(Dkt. No. 7-2 at 20.)

ORDER
PAGE - 2

After receiving Curcio's letter, the Keeleys submitted a claim to Travelers under this policy. On March 7, 2014, Travelers issued a letter denying coverage.

On March 26, 2014, Curcio sued the Keeleys, alleging that they violated the condo bylaws. Curcio asserted that she was entitled to an injunction requiring the Keeleys to remove their hard surface flooring and preventing them from future installation of any hard surface flooring without Curcio's consent.

Because Travelers denied coverage, the Keeleys negotiated a settlement with Curcio in which they agreed to remove the hard surface floors and pay her $3,442.49. The total cost to the Keeleys to remove the floors, temporarily vacate their unit, and pay Curcio was $22,063.06.

On February 23, 2016, the Keeleys brought the present suit against Travelers for damages and injunctive relief. (Dkt. No. 1-2.) The Keeleys asserted claims for (1) violation of the Washington Insurance Fair Conduct Act (IFCA), Wash. Rev. Code § 48.30.015; (2) insurance bad faith; (3) coverage by estoppel; (4) violation of the Washington Consumer Protection Act (CPA), Wash. Rev. Code chap. 19.86; (5) breach of contract; and (6) negligence. (*Id.* at 9.)

On March 30, Travelers moved to dismiss all claims, arguing that the Keeleys stated no plausible theory of coverage. (Dkt. No. 7 at 1.) On April 28, the Keeleys moved for partial summary judgment, asking the Court to find as a matter of law that Curcio's claim was covered by their policy and that Travelers owed them the duty to defend. (Dkt. No. 12 at 5.)

## II.   DISCUSSION

### A.   Legal Standards

A defendant may move for dismissal when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To grant a motion to dismiss, the court must be able to conclude that the moving party is entitled to judgment as a matter of law, even after accepting all factual allegations in the complaint as true and construing them in the light most favorable to the non-moving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

The Court shall grant summary judgment if the moving party shows that there is no

genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

**B.     Analysis**

There is no factual dispute in this case. The Court first addresses the central legal question of whether the Keeleys' insurance policy covered Curcio's claim.

1.   <u>Coverage of Curcio's Claim</u>

Travelers denies that the claim is covered, arguing that there was no "property damage," "damages," or "occurrence" within the meaning of the Keeleys' policy. (Dkt. No. 7 at 7-8.)

The Court construes an insurance policy as a whole, giving the policy a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Amer. Nat. Fire Ins. Co. v. B & L Trucking and Constr. Co., Inc.*, 951 P.2d 250, 256 (Wash. 1998) (internal quotations omitted). "[A]mbiguity is resolved in the favor of the policyholder." *Moeller v. Farmers Ins. Co. of Washington*, 267 P.3d 998, 1001 (Wash. 2011). A clause is ambiguous if, on its face, it is fairly susceptible to two different reasonable interpretations. *Amer. Nat. Fire*, 951 P.2d at 256.

*"Property damage"*: Travelers first argues that there was no "property damage" within the meaning of the policy. (Dkt. No. 7 at 8.) The policy defines property damage as "physical injury to, destruction of, or loss of use of tangible property." (Dkt. No. 7-2 at 20.)

Here, the subject property damage is Curcio's loss of use of her condo based on the alleged excessive noise. (*See* Dkt. No. 13-1 at 11.) According to Travelers, because the Keeleys disputed Curcio's allegation, "lack of noise was a potential defense argument" and thus "noise was not part of their claim."[1] (Dkt. No. 7 at 8.) This argument suggests that property damage

---

[1] Travelers also notes that Curcio's complaint does not mention noise. (Dkt. No. 7 at 8.) But, Curcio's letter clearly complains of noise. (Dkt. No. 13-1 at 11-12.) And, the Keeleys' policy provides coverage where "a claim is made or a suit is brought." (Dkt. No. 7-2 at 34.) This is sufficient to trigger coverage under Washington law. *See United Servs. Auto Ass'n v. Speed*, 317 P.3d 532, 538 (Wash. Ct. App. 2014.)

ORDER
PAGE - 4

must be conclusively proved before Travelers's involvement is required. The language of the policy does not support this suggestion. (*See* Dkt. No. 7-2 at 48) (policy is triggered when "a claim is made or a suit is brought").

Travelers further asserts that there is no showing that the noise prevented Curcio from using her unit. (Dkt. No. 7 at 8.) But, "[p]roperty in a thing [includes] the unrestricted right of use, enjoyment, and disposal. Anything which destroys one or more of these elements of property to that extent destroys the property itself." *Prudential Prop. and Cas. Ins. Co. v. Lawrence*, 724 P.2d 418, 422 (Wash. Ct. App. 1986) (internal quotations omitted). Curcio described the noise as "unbearable," clearly identifying a restriction on her enjoyment of the unit. The Court thus finds that there was "property damage" at issue.

*"Damages"*: Travelers next contends that Curcio did not claim "damages" within the meaning of the policy. (Dkt. No. 7 at 8.) Where an insurance policy covers a suit against an insured seeking "damages," the policy does not cover suits seeking only non-monetary remedies. *Australia Unlimited, Inc. v. Hartford Cas. Ins. Co.*, 198 P.3d 514, 523 (Wash. Ct. App. 2008).

Curcio's complaint seeks injunctive relief, attorney fees, and "such other and further relief as the court deems appropriate." (Dkt. No. 7-2 at 5.) Travelers maintains that Curcio sought only non-monetary remedies, meaning her claim is excluded under *Australia Unlimited*. (*See* Dkt. No. 7 at 8.) The Keeleys respond that this case is analogous to *Lawrence,* which they assert "holds in so many words that a demand for 'other additional relief as may seem just and equitable' . . . permits an award of monetary damages." (Dkt. No. 12 at 13.)

In *Lawrence*, the plaintiffs sought injunctive relief to prevent construction of their neighbors' home, which obstructed the plaintiffs' view. 724 P.2d at 420. The plaintiffs' complaint also alleged "damages for obstruction of their view in the past, continuing obstruction of their view, breach of the covenant of quiet enjoyment of their property and emotional distress," and it sought "such additional relief as may seem just and equitable." *Id.* at 419-20. The Court of Appeals reasoned that the complaint sought "damages for emotional distress and

'such additional relief as may seem just and equitable,' allegations that would permit an award of monetary damages." *Id.* at 423.

Neither case cited by the parties is squarely on point. In *Australia Unlimited*, the statute sued upon did not provide for monetary damages, thus restricting the action to injunctive relief. 198 P.3d at 523. Here, no such restriction exists. In *Lawrence*, the complaint identified the source of monetary relief, where here there is no mention of any harm creating monetary damages. Ultimately, however, the *Lawrence* court identified the catchall allegation of "such additional relief" as one "that would permit an award of monetary damages," triggering the insurer's duty to defend. 724 P.2d at 423. The Court thus concludes that Curcio's complaint alleged damages such that the policy applied to her claim.

*"Occurrence"*: Finally, Travelers asserts that there was no "occurrence" within the meaning of the policy. (Dkt. No. 7 at 7.) The policy defines an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results during the policy period, in . . . property damage." (Dkt. No. 7-2 at 20.)

Under Washington law, "an accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces or brings about the result of injury or death." *Safeco Ins. Co. of Am. v. Butler*, 823 P.2d 499, 509 (Wash. 1992) (internal quotation omitted). "The means as well as the result must be unforeseen, involuntary, unexpected and unusual." *Id.* The accident need not be caused by "an unconscious, nonvolitional act." *Nationwide Mut. Ins. Co. v. Hayles, Inc.*, 150 P.3d 589, 593 (Wash. Ct. App. 2007). Rather, the act must be "done with awareness of the implications or consequences of the act." *Id.*

For example, in *Hayles*, the insured turned on the irrigation system in an onion field, causing the onions to develop rot. *Id.* at 592. The insurer argued that there was no "occurrence" because the insured intentionally turned on the irrigation. *Id.* The Court of Appeals disagreed, reasoning that there was no evidence that the insured knew or should have known that turning on

the irrigation system would damage the crop. *Id.* at 594. Thus, the court concluded, "turning on the irrigation, although intentional, was not deliberate," and constituted "an occurrence." *Id*.

By contrast, in *Butler*, the court concluded that no "accident" occurred. 823 P.2d at 509. There, the insured chased after a group of kids who blew up his mailbox. *Id.* at 501-02. The insured fired his handgun six times at the kids' truck, and one of the kids was seriously injured. *Id.* The insured claimed that he did not intend to shoot anyone and intentionally fired at the truck, rather than the people. *Id.* at 502. However, in light of the insured's extensive experience with firearms, the court found that "no reasonable person could conclude [he] was unaware of the possibility of ricochet, or that a ricochet might hit an occupant of the truck." *Id*. at 509.

The Keeleys argue that the present situation is analogous to *Hayles*, alleging that a "reasonable person in Mr. Keeley's position might not have been aware—indeed might have been completely unaware—that installing new floors would require consent, that consent would not be forthcoming, or that the Keeleys' floors would affect anyone else's unit." (Dkt. No. 12 at 9.) But in *Hayles*, the insured "had no duty to observe the crop and no authority to decide when the crop needed water or when it needed to be dry." 150 P.3d at 594. The same cannot be said for the Keeleys: as members of the condo association, they had a duty to abide by the condo bylaws. And, though the Keeleys were not actually aware they were in violation, *Butler* makes clear that an insured's subjective knowledge does not govern. *See* 823 P.2d at 509. Rather, the Court focuses on what a reasonable person in the Keeleys' position knew or should have known. While the Keeleys' predicament is certainly unfortunate, the Court cannot say that a reasonable person ignores his or her own duty.

The Court thus concludes that the harm resulting from the floor's installation was not truly an "unexpected, independent, and unforeseen happening." *See id.* As such, there was no "occurrence" within the meaning of the policy. The Keeleys' motion for partial summary judgment on the coverage issue is DENIED. Travelers's motion to dismiss is GRANTED as to the Keeleys' claims for breach of contract and coverage by estoppel.

### 2. Duty to Defend

The Keeleys also ask the Court to find as a matter of law that Travelers had a duty to defend. (Dkt. No. 12 at 5.) An insurance company's duty to defend "arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." *Truck Ins. Exch. v. VanPort Homes, Inc.*, 58 P.3d 276, 281-82 (Wash. 2002) (internal quotation omitted). "[I]f there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend." *Am. Best Food, Inc. v. Alea London, Ltd.*, 229 P.3d 693, 696 (Wash. 2010).

As discussed above, it is not reasonable to conclude that ignorance of one's own duty constitutes an accident for the purpose of the insurance policy. Travelers did not have a duty to defend the Keeleys. The Keeleys' motion for summary judgment on this issue is DENIED.

### 3. Extracontractual Claims

The Keeleys also asserted four extracontractual claims: (1) violation of IFCA, (2) insurance bad faith, (3) violation of the CPA, and (4) negligence. (Dkt. No. 1-2 at 9.) Travelers seeks dismissal of these claims under Fed. R. Civ. P. 12(b)(6). (*See* Dkt. No. 7 at 9-10.)

The Keeleys' complaint alleges the following additional facts to support their extracontractual claims: The Keeleys submitted a claim for coverage on February 10, 2014. (Dkt. No. 1-2 at 4.) Travelers claims adjuster Ross Purnell was assigned to their claim. (*Id.*) Purnell contacted Curcio's lawyer before speaking to the Keeleys and without the Keeleys' consent. (*Id.* at 4-5.) Purnell then went on vacation without telling the Keeleys or contacting them about their claim. (*Id.* at 5.) After Purnell returned, he e-mailed Mr. Keeley stating: "While I was out James was reviewing the coverage issues to be addressed by the claim since you are aware they are not claiming injury or property damages." (*Id.*) On March 7, 2014, Travelers denied the claim while "paradoxically" admitting that Curcio claimed "damages due to installation of flooring." (*Id.*)

In light of these facts, the Keeleys assert that Travelers failed to properly investigate their claim and made misrepresentations to the Keeleys. (Dkt. No. 15 at 8.)

*IFCA*: An insured who is "unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action in the superior court of this state to recover the actual damages sustained, together with the costs of the action, including reasonable attorneys' fees and litigation costs." Wash. Rev. Code § 48.30.015(1). Because the Court found in Travelers's favor on the issues of coverage and the duty to defend, the Keeleys cannot demonstrate that Travelers unreasonably denied them a claim for coverage or payment of benefits. Travelers's motion to dismiss the IFCA claims is GRANTED.

*Insurance Bad Faith*: "An insurer acts in bad faith if its breach of the duty to defend was unreasonable, frivolous, or unfounded." *Am. Best,* 229 P.3d at 699. The Court found that the insurance policy did not cover the Keeleys' claim and that Travelers had no duty to defend. Thus, Travelers's motion to dismiss the bad faith claims is GRANTED.

*CPA*: The five elements of a CPA claim are: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) a public interest impact; (4) an injury to plaintiffs in their business or property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986). Travelers' briefing focuses solely on the first prong; the Court thus limits its analysis to this prong as well. (*See* Dkt. No. 7 at 9-10.)

Washington Administrative Code (WAC) § 284-30-330 sets forth certain practices that *per se* constitute unfair or deceptive insurance practices. The Keeleys contend that several such violations occurred.

First, the Keeleys assert that Travelers violated WAC § 284-30-330(1) by misrepresenting that Curcio's loss of use of her unit did not constitute "property damage" and that Curcio's complaint did not seek "damages." (*See* Dkt. No. 15 at 4-5.) As discussed above, the Court determined that this interpretation of the policy is incorrect. The Keeleys have thus pleaded sufficient facts to support a violation of WAC § 284-30-330(1).

The Keeleys further argue that Travelers failed to promptly act upon receiving their claim in violation of WAC § 284-30-330(2) and failed to promptly explain the basis for denying their

claim in violation of WAC § 284-30-330(13). (Dkt. No. 15 at 3-5.) But, the complaint alleges that Travelers denied the Keeleys' claim after 25 days. (Dkt. No. 1-2 at 4-5.) This was within the time requirement set forth by Washington regulations. *See* WAC § 284-30-370 ("Every insurer must complete its investigation of a claim within thirty days after notification of claim, unless the investigation cannot reasonably be completed within that time.").

The Keeleys also suggest that Travelers refused to pay their claim without conducting a reasonable investigation in violation of WAC § 284-30-330(4). (*See* Dkt. No. 15 at 8-9; Dkt. No. 1-2 at 8.) But as discussed above, Travelers properly denied coverage because there was no "occurrence." Further investigation into the claim would not have changed this outcome.

In sum, Travelers's motion to dismiss the Keeley's CPA claims is DENIED as to claims under WAC § 284-30-330(1). The motion to dismiss the CPA claims is otherwise GRANTED.

*Negligence*: The Keeleys base their negligence claims on the same violations as their CPA claims. (*See* Dkt. No. 15 at 6-7.) The Court thus reaches the same conclusion: Travelers's motion to dismiss the negligence claims is DENIED as to claims under WAC § 284-30-330(1) and is otherwise GRANTED.

### III. CONCLUSION

For the foregoing reasons, the Keeleys' motion for partial summary judgment (Dkt. No. 12) is DENIED. Travelers's motion to dismiss (Dkt. No. 7) is DENIED as to claims arising from WAC § 284-30-330(1) and is otherwise GRANTED.

//
//
//
//
//
//
//

ORDER
PAGE - 10

DATED this 21st day of June 2016.

John C. Coughenour
UNITED STATES DISTRICT JUDGE